**Nicholas A. Gravante Jr**
+1.212.692.6737
NGravante@mintz.com

MINTZ

919 Third Avenue
New York, NY 10022
212 935 3000
mintz.com

June 4, 2026

**VIA ECF**
Mary Kay Vyskocil, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

Re: *ADMI Inc. et al. v. Authentic Brands Group LLC, et al.*, Case No. 25-cv-7301 (S.D.N.Y.)

Dear Judge Vyskocil:

On behalf of Defendants Authentic Brands Group LLC ("ABG"), ABG-SI LLC ("ABG-SI"), Jamie Salter, Daniel Dienst, Michael Sherman, Travel + Leisure Co. ("T+L"), Development 123 LLC, Michael D. Brown, Geoff Richards, and Travis Crisp (together, the "ABG and T+L Defendants"), we write to request a pre-motion conference concerning the ABG and T+L Defendants' anticipated motion to dismiss the Amended Complaint ("FAC"). We further respectfully request that the Court hold Defendants' motion-to-dismiss deadline in abeyance until the Court rules on Defendants' pending sanctions motions, which are potentially case-dispositive.

## Background and Procedural History

As the Court knows, this case arises from Defendant ABG-SI's termination of a licensing agreement that granted Sports Hospitality Ventures, LLC ("SHV") certain rights to use Sports Illustrated trademarks in connection with resort properties (the "License Agreement"). After SHV failed to make contractually mandated quarterly royalty payments—thus putting SHV in default pursuant to the agreement, *see* FAC Ex. 45—ABG-SI terminated the License Agreement on July 29, 2024, after giving SHV notice and an extra week to cure. FAC Ex. 43D.

Plaintiffs filed their original Complaint more than a year later, on August 19, 2026. Dkt. No. 56. They then engaged in extensive "pre-service litigation," all the while maintaining that they intended to amend their Complaint. Dkt. No. 103. But they never did so, despite filing baseless motions for a preliminary injunction and to disqualify the ABG and T+L Defendants' counsel. Dkt. Nos. 95, 105. On April 6, 2026, all Defendants filed pre-motion letters, identifying numerous deficiencies in the Complaint. *See, e.g.*, Dkt. No. 120 (ABG and T+L Defendants' Pre-Motion Letter).

The parties then appeared before the Court on May 7, 2026. The Court noted the deficiencies raised by Defendants, struck Plaintiffs' original pleading based on its improper reliance on AI-hallucinated case law, and ordered Plaintiffs—if they wished to continue to pursue this litigation in this forum—to file an amended complaint addressing the issues raised by

Defendants and the Court. The Court also invited Defendants to move for sanctions once Plaintiffs' amended complaint was filed, which Defendants did, seeking dismissal. *See* Dkt. No. 153.

**<u>Plaintiffs' Amended Complaint Fails to Cure the Deficiencies Found in the Original</u>**

Despite giving Plaintiffs ample notice of the Complaint's shortcomings, the Amended Complaint still features the following defects warranting dismissal, among others:

***Prolix Pleading***. Ignoring the Court's admonition that Plaintiffs adhere to Rule 8, Plaintiffs' Amended Complaint runs nearly 900 pages when considering its 50 exhibits. Such "labyrinthian prolixity" warrants dismissal. *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir. 1972); *see Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 32-33 (2d Cir. 2008); *Blakely v. Wells*, 209 F. App'x 18, 19-20 (2d Cir. 2006).

***Lack of Personal Jurisdiction.*** As in their original Complaint, Plaintiffs still fail to allege that out-of-state individual Defendants Richards, Brown, or Crisp have sufficient New York contacts for the Court to exercise personal jurisdiction over them under C.P.L.R. § 302(a). And "Plaintiffs cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction … if the RICO claim is dismissed," as it should be here. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) (citation and quotation marks omitted).

***Contradictory Allegations.*** Plaintiffs' Amended Complaint includes alleged "facts" that are contradicted by their own verified pleadings in other cases. For example, Plaintiffs alleged in both their original and Amended Complaints that T+L paid a $6 million "kickback" to Malibu55, Inc., "a company unaffiliated with ADMI and SHV," but allegedly controlled by former ADMI CEO Joseph Cellura, as an improper inducement to obtain a sublicense. Compl. ¶ 44; FAC ¶ 15. But in a separate, ongoing litigation, Plaintiffs ADMI Inc. and SIR Inc. have repeatedly made the opposite allegation, asserting through their same counsel, Mr. Dollinger, in a verified complaint filed in this District: "On June 5, 2023, T&L made the loan to ADMI depositing the funds directly to MALIBU55's account, believing as CELLURA told them it was the holding company for ADMI and that the ADMI's Board had approved the Six Million Dollar ($6,000,000) loan."[1] Such contradictory, bad-faith pleadings do not state a viable claim. *See Revellino & Byczek, LLP v. Port Auth. of New York & New Jersey (PANYNJ)*, 682 F. App'x 73, 76 (2d Cir. 2017) (affirming sanctions where allegations in a federal civil rights complaint misleadingly omitted key facts asserted by the same attorney on behalf of the same client in a related state criminal proceeding).

The Amended Complaint's allegations are also contradicted by its own exhibits. In both complaints, Plaintiffs claim they were not in default because they had "overpaid" royalties. Compl.

---

[1] Am. Compl., *Baynon Int'l Corp. et al. v. Cellura et al.*, No. 7:24-cv-00859, ECF 17 ¶ 83 (S.D.N.Y. Mar. 28, 2024). Notably, Plaintiffs doubled down on this allegation in February of this year, well after filing the Complaint in this action, in another verified pleading signed by Mr. Dollinger's co-counsel, Lawrence R. Lonergan. *See* Second Am. Compl., *Empire Trust, LLC et al. v. Molly M. Legoy, as special Administrator of the Estate of Joseph R. Cellura, et al.*, No. 3:25-cv-00553, ECF 128 ¶ 81 (D. Nev. Feb. 4, 2026).

¶ 278; FAC ¶ 219. But Plaintiffs admitted in contemporaneous documents attached to their pleadings that they were in default in July 2024. FAC Ex. 45. And regardless, Plaintiffs' position that payments made under the sublicense should be credited against the quarterly royalty amounts due under the License Agreement is squarely foreclosed by the governing agreements, which expressly provide that payments under the sublicense are "in addition to" those under the License Agreement. FAC Ex. 27 § 8.

***Failure to Plead RICO Predicate Acts.*** Plaintiffs' original Complaint failed to plead any predicate acts to sustain their RICO claims, let alone two per defendant, as required. *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). The Amended Complaint fails to rectify this issue. For instance, Plaintiffs allege wire fraud on the basis of the transmittal of certain agreements and default notices. But wire fraud requires an element of deception that Plaintiffs have not shown. *See Acklin v. Eichner*, 2024 WL 775191, at *8 (S.D.N.Y. Feb. 26, 2024). In fact, their pleading undercuts any notion of fraud, because they admit the very contract they claim is fraudulent is clear "on the face of the executed text." FAC ¶ 118.[2]

***Failure to Plead RICO Continuity.*** Both complaints also fail to plead RICO continuity. Plaintiffs originally alleged that the plot was hatched in "late May 2024," when Defendants "coalesced into a coordinated group acting to eliminate SHV and reallocate the venture's core business and trade secrets" (Compl. ¶ 257), and then completed two months later on July 29, 2024, when Defendants terminated the License Agreement. *Id.* ¶ 278. That is insufficient for the requirement that RICO acts be ongoing or extend over at least two years. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). In their Amended Complaint, Plaintiffs modify their phrasing, but keep the alleged pattern's start date, asserting that "[b]y late May 2024, [Defendants] were acting in a coordinated manner . . . [and w]hat began as separate initiatives had converged into a unified course of conduct." FAC ¶ 205. "There is no threat of continuity where the alleged purpose of a fraudulent scheme was essentially accomplished" in two months. *Rio Tinto PLC v. Vale*, 2015 WL 7769534, at *10 (S.D.N.Y. Nov. 20, 2015) (citation modified).

***Failure to Plead Trade Secret Misappropriation.*** Plaintiffs still fail to allege their Defend Trade Secrets Act claim because (among other reasons) they do not identify any purported trade secret with the required specificity, instead "simply list[ing] general categories of information," *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018), such as development models, financial projections, and feasibility studies. Compl. ¶ 343; FAC ¶ 284. Nor do Plaintiffs allege any acts of misappropriation through improper means. 18 U.S.C. § 1839(5).

***Plaintiffs' State-Law Claims Should Be Dismissed.*** Because Plaintiffs' federal claims fail, and there is no other basis for subject-matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over the state-law claims. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000). In any event, those claims fail as a matter of law for similar reasons.

---

[2] Plaintiffs' RICO conspiracy claims also fail because they are "entirely dependent" on the "substantive RICO claims." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004).

MINTZ

Respectfully submitted,

*/s/ Nicholas A. Gravante, Jr.*

Nicholas A. Gravante, Jr.

NAG

cc: All Counsel of Record