**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADMI INC., et al.,<br>Plaintiffs,<br><br>vs.<br><br>AUTHENTIC BRANDS GROUP, LLC., et al.,<br><br>Defendants,<br><br>and<br><br>SPORTS HOSPITALITY VENTURES, LLC.,<br><br>Nominal Defendant. | Case No.: 25-cv-7301(MKV) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A PRELIMINARY INJUNCTION BASED ON THE FIRST AMENDED COMPLAINT

Respectfully submitted:

**LAW OFFICE OF DOUGLAS R. DOLLINGER, P.C.**

Douglas R. Dollinger, Esq.
Attorney for ADMI Inc. and SIR Inc.
570 County Rt. 49
Middletown, New York 10940
Tel: 845.741.9363
Email: ddollingeresq@gmail.com

## I. TABLE OF CONTENTS

Preliminary Statement ..... 1
Procedural Posture and Scope of the Application ..... 3
Statement of Facts ..... 3
I. ADMI and EVH Developed the Hospitality Platform ..... 3
II. SHV Developed the Program and Pipeline ..... 5
III. T+L Received Project Materials ..... 6
IV. The Disputed Default and Termination ..... 10
V. Subsequent Projects ..... 11
A. Nashville ..... 11
B. Tuscaloosa ..... 12
C. Exit 407 ..... 12
Argument ..... 13
I. Standard for Preliminary Relief ..... 13
II. Agreements and Protected Information ..... 14
III. New York Franchise Sales Act ..... 19
IV. Irreparable Injury ..... 20
V. Balance, Public Interest and Security ..... 23
Conclusion ..... 24

## II. TABLE OF AUTHORITIES

**Cases** **Pages**

*Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13 (2d Cir. 1987) .................................. 14

*BaseCap Analytics Inc. v. Amenn*, No. 23-cv-9370, ECF 43 (S.D.N.Y. Nov. 22, 2023) ........................................................................................................ 13, 17, 23, 24

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) ........................... 13, 15

*Elder Technologies, Inc. v. Visone*, No. 25-cv-6165, ECF 55 (S.D.N.Y. Sept. 2, 2025) ........................................................................................................................ 22

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ............ 13, 16, 21

*Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.*, 920 F.2d 171 (2d Cir. 1990) ................................................................................................ 18

*Marsh & McLennan Agency, LLC v. Alliant Insurance Services, Inc.*, No. 24-cv-9914, ECF 31 (S.D.N.Y. Jan. 27, 2025) ........................................................... 14-15, 22

*North American Soccer League, LLC v. U.S. Soccer Federation, Inc.*, 883 F.3d 32 (2d Cir. 2018) ............................................................................................ 13, 14, 16

*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999) .............................................................................................. 17-18

*South Shore D'Lites, LLC v. First Class Products Group, LLC*, 215 A.D.3d 412 (1st Dep't 2023) ....................................................................................................... 19

*Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ............................................. 22

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995) ........................................................................................................... 13, 14, 22

**Statutes and Rules** **Pages**

18 U.S.C. §§ 1836, 1839 ..................................................................................... 14, 17

28 U.S.C. § 455 ........................................................................................................... 3

N.Y. General Business Law §§ 681, 683, 687, 691 ........................................................ 19–20

Federal Rule of Civil Procedure 65 ................................................................ 1–2, 14–16, 24

## III. EXHIBIT LIST

First Amended Complaint exhibits cited:

Ex. 1 — Dubiner declaration (ECF No. 139-1)

Ex. 2 — Project Dynasty presentation (2019) (ECF No. 139-2)

Ex. 3 — SHV Operating Agreement and Attachment A (ECF No. 139-3)

Ex. 4 — EVH WIRED and UMusic materials (ECF No. 139-4)

Ex. 6 — Sports Illustrated License Agreement (ECF No. 139-6)

Ex. 7C — Amendment No. 3 to License Agreement (ECF No. 139-7)

Ex. 8 — Contribution Agreement (ECF No. 139-8)

Ex. 10 — Payments to ABG (ECF No. 139-10)

Ex. 13A — EVH–Kituwah nondisclosure agreement (ECF No. 139-13)

Ex. 21 — ADMI–T+L nondisclosure agreement (ECF No. 139-21)

Exs. 23A–C — Franchise-related correspondence (ECF No. 139-23)

Ex. 25 — Master Relationship and License Agreement (ECF No. 139-25)

Ex. 27 — Consent Letter (ECF No. 139-27)

Ex. 28 — Minimum royalty correspondence (ECF No. 139-28)

Ex. 30 — Employee handbook acknowledgement (ECF No. 139-30)

Ex. 41 — ABG brand-material correspondence (ECF No. 139-41)

Exs. 43A–D — ABG notices (ECF No. 139-43)

Ex. 48 — Proposed ADMI loan (ECF No. 139-48)

Ex. 49 — June 2024 Pipeline & Process Summary (ECF No. 139-49)

Schroeder declaration and exhibits — ECF No. 97

Other documents cited:

Memorandum Exs. 1–3 — 2021 emails and Orlando presentation.

Memorandum Exs. 4–7 — 2023 agenda and pipeline; 2024 architectural records; Nashville proposal.

Memorandum Ex. 8 — SHV Brand Playbook, selected excerpts.

Smith Decl. Exs. A–D — 2021–2022 branding emails.

Purdy Decl. Ex. 1 — Sevierville planning records.

Ghiselli Decl. Ex. 1- March 28, 2023 email.

## PRELIMINARY STATEMENT

Plaintiffs ADMI Inc. ("ADMI") and SIR Inc. ("SIR") seek an expedited evidentiary hearing and preliminary relief against the continuing expansion and unauthorized use or disclosure of identified confidential development information and proprietary materials contributed by ADMI and Experiential Ventures Hospitality, LLC ("EVH") or developed through Sports Hospitality Ventures, LLC ("SHV"). Plaintiffs allege that defendants gained access through the **authorized** licensed and governed venture, then continued developing the platform and related opportunities outside that structure without authorization. The issue is the continuing use of the development work and information, including the integrated methods by which projects were evaluated, financed, branded, and brought to market. Michael Ghiselli ("Ghiselli") Decl. ¶¶ 3–9, 18–23; Kent Purdy ("Purdy") Decl. ¶¶ 3–17, 21–23; Schroeder Decl. ¶¶ 5–10, 21–25, ECF No. 97.

Plaintiffs also request that, if a preliminary injunction is entered after notice and a hearing, the Court temporarily restrain the responding defendants and persons bound under Rule 65(d) from using the name "Sports Illustrated Resorts" and Logo in connection with the development, marketing, and operation of the challenged resort platform and projects while the parties' rights are adjudicated. Plaintiffs request this relief in addition to protection against unauthorized use or disclosure of identified confidential materials. The proposed order to show cause requests a hearing and does not itself impose interim restraints.

The First Amended Complaint ("FAC") pleads the factual foundation for this request. Paragraphs 78–84 address ADMI's and EVH's preexisting work and its protection; paragraphs 85–88 describe additional SHV-developed material and alleged unauthorized access and use; Counts V and VI plead federal and state trade-secret claims; and Count XVIII seeks preliminary and permanent relief concerning continuing exploitation, possession, and disclosure. FAC ¶¶ 78–

88, 283–300, 359–363. The present motion seeks relief supported by the evidence and tailored to the Rule 65 standard while the Court determines the parties' rights.

The contemporaneous record includes the June 2021 license and its confidentiality provisions, Amendment No. 3, the SHV operating agreement, the ADMI–Travel + Leisure Co ("T+L") nondisclosure agreement, and the later sublicense and consent letter. Those agreements perform different functions. The operating agreement identifies Existing ADMI Projects and addresses SHV governance and dissolution; the license and related documents address the brand rights and confidential information. Plaintiffs dispute the asserted license termination and contend that the governing restrictions continue to protect specified information. FAC Exs. 3, 6, 7C, 25, 27; Ghiselli Decl. ¶¶ 9–11, 19; Purdy Decl. ¶¶ 8–10, 15–16.

The evidentiary development since the earlier application is principally a more concrete comparison between the enterprise's earlier work and the subsequent projects. The Sports Illustrated Resorts that just recently had its grand opening November, 13, 2026 in Nashville, TN displays named spaces and customer-experience practices already documented in SHV's earlier development materials; Tuscaloosa proceeds in the same riverfront opportunity presented by ADMI and developed by SHV with T+L's participation; and the Exit 407 proposal corresponds geographically and conceptually to a site already recorded in SHV's June 2024 pipeline. Plaintiffs do not suggest that different parcels, generic hospitality amenities, or ABG-owned trademarks alone prove misappropriation. They seek to establish whether particular protected work and information were carried forward outside the rights granted by the relevant agreements. FAC Exs. 3, 21, 25, 27, 49; Ghiselli Decl. ¶¶ 18–23; Purdy Decl. ¶¶ 19–21, 27–28, 30–32; Schroeder Decl. ¶¶ 6–10, 21–25, ECF No. 97.

Plaintiffs previously moved for preliminary relief. (see ECF Nos. 91, 97) At the May 7, 2026 conference, counsel withdrew the motion and requested that the withdrawal be without prejudice;

the Court then struck the original complaint with leave to amend and noted that doing so effectively vacated the motion. May 7 Tr. 8:19–20, 9:3–15, 12:15–18. Plaintiffs seek prompt consideration on the First Amended Complaint, the earlier declaration and exhibits, and the subsequent developments.

**PROCEDURAL POSTURE AND SCOPE OF THE APPLICATION**

Plaintiffs have moved for recusal under 28 U.S.C. § 455 and seek prompt consideration of this application without withdrawing that motion. They respectfully request consideration through an appropriate procedure compelled and otherwise authorized by the Court, together with an expedited hearing. Dollinger Decl. ¶¶ 5–6.

The record also includes filings concerning the individual and Experiential parties. ECF Nos. 219, 222, 224. ADMI and SIR seek protection of their own properly asserted rights and ask the Court to address any dispute concerning authority to pursue relief for SHV. They do not assume that corporate rights may automatically be enforced as individual rights; the operative pleadings, party status, and any derivative requirements must be examined separately.

The request for expedited consideration is made on notice and without waiving the pending motions before the Court. Plaintiffs request the hearing allowing the Court to oversee the testimony and examine the witnesses, the agreements, the claimed protected materials, current harm, and the scope of any appropriate order.

**STATEMENT OF FACTS**

**I. ADMI And EVH Developed The Hospitality Platform Before The Disputed Breakup.**

On January 28, 2021, ABG's executive vice president for business development described ABG's interest in licensing its Sports Illustrated intellectual property for hospitality and stated that ABG was not a hotel operator and did not have a hotel reservation system. In April 2021, members of the development team circulated proposed marks for submission to ABG, including "Sports

Illustrated Resort" and "SI Resort." Memorandum Ex. 1 - January 28, 2021 Goldberg email, PDF p. 2; Memorandum Ex. 2 - April 27, 2021 "SI Trademarks / Websites" email, PDF p. 2; Ghiselli Decl. ¶¶ 40–41; Purdy Decl. ¶¶ 3–4.

ADMI and EVH entered the License Agreement, effective June 1, 2021, with ABG-SI concerning Sports Illustrated-branded hospitality development. FAC Ex. 6. Before the license, ADMI developed a college-market strategy and other business materials; the April 2019 Project Dynasty presentation bears a private-and-confidential legend. EVH's earlier work included WIRED and UMusic hospitality materials. Ghiselli Decl. ¶¶ 3–8; Purdy Decl. ¶¶ 3–6; FAC Exs. 2, 4; FAC ¶¶ 78–84. These are distinct from ABG-SI's Sports Illustrated brand rights.

During the early development of the resort brand, Alex Smith worked on the resort-specific name and logo on ADMI's behalf with other participants, including representatives of EVH and ABG. The April 2021 correspondence identifies proposed "Sports Illustrated Resort" and "SI Resort" names; February 2, 2022 correspondence documents the logo-development work and circulation of a final logo PDF. Smith Decl. ¶¶ 1–8; Memorandum Ex. 2; Smith Decl. Exs. C–D. Smith also describes his 2021–2022 naming proposals. Smith Decl. ¶ 2 & Exs. A–B.

ADMI's Project Dynasty presentation was marked "PRIVATE & CONFIDENTIAL," and Ghiselli states that ADMI limited distribution of nonpublic development information, used nondisclosure agreements and did not publish those materials on its website. FAC Ex. 2; Ghiselli Decl. ¶ 7. These steps are part of the record of how the parties protected their work before SHV's formation.

Section 10(a) of the license addresses nonpublic or proprietary information and states that confidential information remains the property of the disclosing party. Section 10(c) limits disclosure and, following expiration or termination, prohibits use or disclosure of the other party's confidential information absent written agreement, subject to the contract's exclusions. FAC Ex.

6 §§ 10(a)–(c). Section 4(a) recognizes the licensor's Brand Rights, certain licensee reserved rights, and a nonexclusive, sublicensable, royalty-free perpetual reverse license where reserved rights are incorporated into materials; the scope of those provisions is disputed and must be resolved by item and use. Id. § 4(a)(i)–(ii). Plaintiffs do not contend that ABG's ownership of the Sports Illustrated marks by itself transferred to ADMI, EVH, or SHV.

The pre-venture record includes site-specific development proposals and materials reflecting a continuing resort program. The January 25, 2022 Orlando presentation describes an early resort proposal, including SI Arena, Field of Dreams, SI Swim, SI FIT and attractions. The presentation is marked not for public distribution. Memorandum Ex. 3 - Orlando presentation, pp. 9–12, 15–17, 21–24, 29–33, 43, 48.

## II. SHV Received And Further Developed The Program Through Its Agreements And Project Pipeline.

Amendment No. 3 identifies the contemplated contribution transaction and makes SHV the licensee under the amended license. FAC Ex. 7C. The Contribution Agreement addresses contributed interests and specified website assets. FAC Ex. 8. The SHV operating agreement provides governance and project-development mechanisms. FAC Ex. 3. The allocation of each asset and the scope of any license to use it depend on the governing documents and the evidence; contribution of a brand license does not by itself establish ownership of every other party's confidential material.

Before Kituwah joined the venture, EVH and Kituwah entered into a mutual nondisclosure agreement dated October 27, 2022. The agreement addressed information shared in their discussions, including business plans, financial information, marketing plans, drawings, processes and other proprietary materials. FAC Ex. 13A. The agreement is relevant to the protections applied to venture information supplied during the formation process.

The operating agreement provides a perpetual term unless SHV is dissolved under its terms, and § 12.1 identifies dissolution by written agreement of all members or a final judicial decree requiring dissolution. Ghiselli and Purdy state that, based on their participation and the records available to them, they are unaware of either event. FAC Ex. 3, §§ 1.6, 12.1; Ghiselli Decl. ¶ 25; Purdy Decl. ¶ 26.

Attachment A identifies the Tuscaloosa Riverfront and other Existing ADMI Projects. Ghiselli describes his 2021 meetings with site owners and an architect and his later work introducing T+L to an adjoining-property owner. He also describes ADMI projects in Leeds, Barber, Auburn and Tahoe. FAC Ex. 3, Attachment A; Ghiselli Decl. ¶¶ 10–16, 20.

These agreements preserved distinct roles. ABG-SI supplied rights in the Sports Illustrated brand; ADMI and EVH contributed existing projects and development work; SHV assembled the venture's site-selection, feasibility, design and operating platform. The confidentiality provisions must therefore be applied to each identifiable item and its owner, rather than treating all branded displays as proprietary to plaintiffs. FAC Exs. 3, 6, 8, 49; Ghiselli Decl. ¶¶ 3–13; Purdy Decl. ¶¶ 3–15.

## III. T+L Received Project Materials Through The Negotiated Sublicense And Development Process.

During spring 2023, T+L and the venture discussed a possible relationship. Ghiselli states that Geoff Richards visited Tuscaloosa, that Ghiselli described the college-market strategy and advised that the discussions were confidential, and that ADMI and T+L subsequently entered a nondisclosure and non-circumvention agreement. Ghiselli Decl. ¶¶ 17–18; Purdy Decl. ¶ 11; FAC Ex. 21.

The ADMI–T+L agreement addresses immediate injunctive relief for a violation of its non-circumvention provision and records T+L's acknowledgment that a breach or threatened breach may cause irreparable injury to ADMI. FAC Ex. 21, agreement p. 1 (PDF p. 2). The agreement

states that it terminates two years after its April 14, 2023 effective date and selects Delaware law. Id., agreement p. 2 (PDF p. 3). The parties' conduct, the agreement's term, and the continuing effect of any other applicable obligation must be considered with the evidence.

SHV, as Licensor, and Development 123, LLC, a T+L subsidiary at the time and n/k/a Sports Resort Development LLC, as Licensee, entered into the Master Relationship and License Agreement ("MRLA"), dated as of September 11, 2023, signed by Chris Schroeder for SHV and Geoffrey S. Richards for Development 123. FAC Ex. 25, preamble & signature pages. The MRLA is "subject to ABG, Licensor and Licensee executing" a same-day letter agreement. Id. § 9.5. That consent letter (the "Consent Letter"), issued over the signature block of ABG-SI Chief Legal Officer Jay Dubiner and countersigned by Schroeder and Richards, consents to the sublicense and identifies Tuscaloosa and Athens as the anticipated Initial Projects. FAC Ex. 27 ¶¶ 1–2, 8(B)(ii)(b) & signature pages; see also FAC Ex. 25 §§ 4.2(b), Sched. 4. Paragraph 30 separately restricts a party's disclosure or use for itself or others of confidential information obtained from another party before, during, or after the term, with express exceptions, including information generally known to the public through no violation. Paragraph 31 selects New York courts for disputes arising from the letter. Id. ¶¶ 30–31.

MRLA § 13.1 separately restricts a receiving party's use or disclosure of another party's Confidential Information without consent, subject to the agreement's permitted uses and exceptions. It specifies a five-year post-termination period and, for trade secrets, a period lasting until they cease to constitute trade secrets under applicable law. FAC Ex. 25 §§ 13.1–13.2. Consent Letter ¶ 30 separately addresses use and disclosure of confidential information obtained from another party during the term and thereafter. FAC Ex. 27 ¶ 30.

Consent Letter ¶ 3 provides that, if the underlying license terminates before the sublicense, the sublicensee may make a written election to ABG within ten business days of notification,

subject to the stated transition payment and good-faith conference conditions, for a direct relationship that removes SHV. Plaintiffs dispute valid termination and satisfaction of the conditions. FAC Exs. 27, 43A–D.

The Consent Letter separately recognizes ABG's ownership of the Licensed Property, limits the sublicensee's use to the scope and term of the sublicense, and addresses SHV's prior written approval of initial sales-material designs and material changes. It also assigns ownership of sales materials, excluding the Licensed Sports Illustrated Property, to the sublicensee. FAC Ex. 27 ¶¶ 4–5. These distinct provisions place the scope of the sublicense, the asserted direct transition, and the use of venture materials in the context of the parties' actual agreement.

The parties dispute the interpretation and effect of the consent letter's transition and credit provisions. Paragraph 26 addresses payments following expiration or termination of the underlying license, while paragraphs 8, 24, and 25 address specified payments and credits. Plaintiffs contend that the asserted termination was invalid and that defendants cannot establish the prerequisites for invoking a direct successor arrangement. The Court should determine these issues from the complete agreements and the evidence, including the actual notices and any written election.

On September 20, 2023, T+L and SHV publicly announced a network of sports-themed destinations and identified Tuscaloosa as the first planned college-town location. The announcement described SHV as the Sports Illustrated hotel and resort licensee, identified EVH, Authentic and Kituwah in the SHV partnership, and described a platform combining hotels, vacation ownership, residences and coordinated experiences. T+L, Sept. 20, 2023, https://investor.travelandleisureco.com/news-events/press-releases/detail/841/sports-illustrated-resorts-and-travel-leisure-co-launch-the-ultimate-sports-themed-and-active-lifestyle-resort-network-in-leading-u-s-college-towns-and-leisure-destinations. The parties' actual rights remain governed by their agreements, not the announcement alone.

The September 19, 2023 SHV meeting agenda identified Alabama and Nashville among priority projects and listed site-selection considerations including land commitments, entitlements, equity commitments, and location. The agenda listed Purdy, Defendants Travis Crisp ("Crisp"), and Sam Owl ("Owl") among the attendees. Memorandum Ex. 4 - September 19, 2023 SHV meeting agenda, PDF pp. 2–3.

The October 2023 priority pipeline identified a coordinated program combining rebrands and new builds, with emphasis on university markets and high-traffic destinations. It listed Tuscaloosa, Nashville, Orlando, Pigeon Forge, Ann Arbor, Athens, Cap Cana and Kansas City among projects under development or review. Memorandum Ex. 5 - October 2023 Priority Pipeline, PDF pp. 3–7.

SHV also maintained an internal confidentiality policy. Section 4.6 of its employee handbook addressed trade secrets and confidential business information, including financial records, marketing plans and strategies, and information concerning business partners, vendors and customers. Crisp acknowledged receipt of the handbook (signed it) and his responsibility to follow its policies on March 25, 2024. FAC Ex. 30, PDF pp. 29, 42. The handbook is evidence of SHV's internal policies and the notice given to Crisp.

The June 2024 SHV Pipeline & Process Summary is a contemporaneous record of an integrated development method: initial site review, property-owner terms, market data, feasibility work, pro forma, site committee approval, architectural planning, and potential development funding. It describes Tuscaloosa, Nashville, Exit 407 and the standardized resort elements. FAC Ex. 49, pp. 3–5, 13–14. Ghiselli describes the earlier Tuscaloosa introductions and discussions with Richards; Purdy describes assembling the platform. Ghiselli Decl. ¶¶ 18–23; Purdy Decl. ¶¶ 11–20.

ABG's June 20, 2024 email from Jessica Dasher to T+L and Travis Crisp addresses use of SI archive images and marketing materials at the resort, on websites and in advertising. FAC Ex. 41. That correspondence corroborates joint brand-development activity, but also distinguishes ABG-supplied photographs from independently protected SHV-produced arrangements, specifications and operating standards. Ownership of an underlying SI magazine cover cannot be inferred from its inclusion in a resort proposal.

## IV. The July 2024 Disputed Default And Termination Did Not Erase The Historical Development Work.

ABG-SI's July 8, 2024 notice asserted that $300,000 due July 1 had not been paid and provided a cure period; its July 29 notice purported to terminate the license for nonpayment. FAC Ex. 43A–D. Ghiselli describes ADMI's proposed $300,000 loan, which was not completed; Schroeder disputes the asserted default and treatment of payments and credits. Ghiselli Decl. ¶ 24; Purdy Decl. ¶¶ 24–25; Schroeder Decl. ¶¶ 11–20, ECF No. 97; FAC Exs. 10, 48. The parties dispute the asserted default and termination.

The June 2024 SHV pipeline and process summary describes site identification, evaluation, financial analysis, and a staged development process, and identifies Tuscaloosa, Nashville, Pigeon Forge/Exit 407, operating standards and branded elements. FAC Ex. 49, pp. 3–5, 13–14; Purdy Decl. ¶¶ 15–20; Ghiselli Decl. ¶¶ 21–23, 34.

Schroeder states that T+L received SHV-developed brand standards, project-specific materials, and rebranding concepts during the parties' relationship and publicly used SHV-created materials previously shown to T+L personnel. He describes platform methodologies and their value to SHV. Schroeder Decl. ¶¶ 6–10, 21–25, ECF No. 97; Purdy Decl. ¶¶ 12, 15–18, 28.

The timing matters. Before the purported July 29 termination, T+L personnel were reviewing Tuscaloosa architectural presentations prepared by Lamar Johnson. The July 22 email records transmission to Kevin Moore, Kit Wilburn and Travis Crisp and Wilburn's favorable

response concerning buildings and signage. The July 24 email sent facade signage options to T+L personnel. The later September forwarding shows retention of that correspondence, although forwarding alone does not prove that design activity continued after July 29. Memorandum Ex. 6, PDF pp. 2–71 (June 20 concept deck), 72–73 (July 22 email), 74–85 (July 24 email and facade deck).

**V. The Subsequent Projects Show A Specific Continuity And Use Of The SHV Program.**

**A. Nashville — The Earlier Brand Standards And A Later Operating Property.**

The earlier Nashville proposal describes a new-build SoBro tower near Music City Center and Margaritaville; T+L's 185-suite Nashville property opened after renovation of an existing Midtown building. The Nashville deck and SHV Brand Playbook describe named spaces and practices, including SI FIT and other sports-themed guest experiences. The June 2024 SHV pipeline separately lists "SI FIT resort element & stand alone" as an element developed by SIR staff. T+L's November 13, 2026 announcement identifies SI Fit as a signature amenity at the Nashville resort, together with sports gathering, games, concierge and other fan experiences. FAC Ex. 49, brand-elements summary, PLTF-ADMI/SHV v ABG 001735; Memorandum Ex. 7 (Nashville deck), PDF pp. 8–11, 13–16, 20–21, 27–29; Memorandum Ex. 8 (SHV Brand Playbook excerpts), original PDF pp. 38–41, 58–70, 75, 88; T+L announcement, Nov. 13, 2026. The agreements, access evidence and witnesses' testimony bear on the connection between that earlier work and its subsequent use.

The September 19, 2023 SHV meeting agenda identified Nashville among priority projects. The MRLA's Schedule 4 includes Nashville among approved locations, and the June 2024 pipeline records a Nashville term sheet and evaluation. FAC Exs. 25, 49; Purdy Decl. ¶ 20; Ghiselli Decl. ¶ 22; SHV meeting agenda, Sept. 19, 2023. On November 13, 2026, T+L announced the official opening of its 185-suite Nashville resort and described a September soft opening. T+L stated that

it operated the resort under a license from Authentic and announced further destinations. T+L, "Sports Illustrated Resorts Opens in Nashville, Launching a National Sports Hospitality Brand," Nov. 13, 2026; Purdy Decl. ¶ 42; Ghiselli Decl. ¶ 39. Plaintiffs rely on that announcement for the public operation and expansion it describes, and on the agreements, development records and testimony for their claims concerning the use of protected work.

**B. Tuscaloosa — An Expressly Scheduled ADMI Opportunity Carried Into Construction.**

Tuscaloosa Riverfront was identified as an Existing ADMI Project in Attachment A to the SHV operating agreement. Ghiselli states that Richards toured the original opportunity in March 2023, that Ghiselli discussed the college-market strategy on a confidential basis, and that ADMI facilitated contact concerning an adjoining parcel when T+L sought a larger vacation-club site. FAC Ex. 3, Attachment A; Ghiselli Decl. ¶¶ 10–12, 17, 20–21. The June 2024 pipeline described the project and its development work. FAC Ex. 49.

The June 20 Lamar Johnson concept presentation and July 22 and 24 email traffic establish contemporaneous design work and T+L access before the asserted termination. T+L announced a new Tuscaloosa groundbreaking on May 27, 2026, likewise near the river and university. The resulting sequence supports a serious claim of project continuity; it does not establish that all current plans are identical or that a payment to an architect by itself transferred title. The claims instead rest on the original project designation, documented development work, disclosure, agreements and later construction, with the particular use and legal permission to be addressed at hearing. FAC Exs. 3, 21, 25, 27, 49; Ghiselli Decl. ¶¶ 18–23; Purdy Decl. ¶¶ 19, 30.

**C. Exit 407 — a documented pipeline opportunity and later reported development.**

The June 2024 SHV pipeline identifies Pigeon Forge/Exit 407 with site planning in progress. FAC Ex. 49. Later public reporting describes a planned Sports Illustrated-branded project near Exit 407 with lodging, vacation-ownership and water-park components.

https://mysmokymountainguide.com/news/big-splash-ahead-sports-illustrated-resort/. The coincidence of geography and overall program makes the later proposal relevant to the development chronology, although the currently assembled evidence does not independently establish the identical parcel, a copied plan or the final developer's use of any particular protected document. Purdy Decl. ¶¶ 21, 31 & Ex. 1, PDF p. 3; Ghiselli Decl. ¶ 23. Plaintiffs rely on this as corroborative continuity evidence, not as a freestanding finding of misappropriation.

## ARGUMENT

### I. Standard For Preliminary Relief And The Proper Scope Of An Order.

A party seeking preliminary relief ordinarily must establish likely irreparable harm; either a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor; and that the public interest favors relief. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116–19 (2d Cir. 2009). Where the requested injunction alters the status quo, a clear or substantial likelihood of success is required; a heightened standard may also apply where interim relief would grant substantially all the ultimate relief and could not be undone. *N. Am. Soccer League*, 883 F.3d at 37–38; *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–35 (2d Cir. 1995).

This Court applied the Second Circuit's framework in *BaseCap Analytics Inc. v. Amenn*, No. 23-cv-9370, ECF No. 43, at 3–7 (S.D.N.Y. Nov. 22, 2023), examining the merits, irreparable injury, balance of hardships, and public interest in turn. Citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015), the Court assessed the declarations and documentary evidence and held an evidentiary hearing. Plaintiffs follow that framework here: their agreements and development records address protected information and access; the project record and witness testimony address the alleged use; and the evidence of lost opportunities and relationships addresses the injury and equities. FAC Exs.

2, 3, 6, 13A, 21, 25, 27, 30, 49; Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97; Purdy Decl. ¶¶ 15–20, 36–39; Ghiselli Decl. ¶¶ 17–22, 26–29, 36–38.

The requested temporary restriction on the Sports Illustrated Resorts name would affect ongoing operations. Accordingly, plaintiffs address the possibility that the Court may treat that relief as altering the status quo or granting substantially all of the ultimate relief and require a clear or substantial likelihood of success and a strong showing of irreparable harm. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37–38 (2d Cir. 2018); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–35 (2d Cir. 1995). Plaintiffs request an evidentiary hearing so the Court may evaluate the contracts, the status quo, the requested restriction and its effects on each party.

The DTSA authorizes an injunction to prevent actual or threatened misappropriation on such terms as the court deems reasonable, and, where appropriate, an order requiring affirmative actions to protect the trade secret, subject to statutory limits. 18 U.S.C. § 1836(b)(3)(A). Rule 65(d) requires an order that states its reasons and describes the acts restrained or required in reasonable detail, without reference to the complaint or other documents, and binds only the persons described in the rule who receive actual notice. Fed. R. Civ. P. 65(d)(1)–(2). Rule 65(c) requires security in an amount the Court considers proper to pay the costs and damages of any party found to have been wrongfully enjoined. Fed. R. Civ. P. 65(c). A contractual acknowledgment concerning harm supports, but does not replace, the required factual showing. *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987).

## II. Likelihood Of Success — Agreements And Protected Development Information.

The ADMI–T+L agreement's acknowledgment of possible irreparable injury and its provision for an immediate injunction claim are relevant to the contractual framework. FAC Ex. 21, p. 1. In *Marsh & McLennan Agency, LLC v. Alliant Insurance Services, Inc.*, No. 24-cv-9914 (MKV),

ECF No. 31 (S.D.N.Y. Jan. 27, 2025), this Court considered the parties' contractual acknowledgment alongside evidence of threatened harm. Plaintiffs seek a hearing to establish the applicable restrictions, conduct and present injury here.

Section 10 of the license addresses confidential information and post-termination use, subject to its terms and exclusions. The consent letter and other agreements have their own parties, scope, and conditions. FAC Exs. 6, 7C, 25, 27. Plaintiffs contend that the restrictions protect identified nonpublic materials furnished for the venture and that defendants could not use those materials for an unauthorized purpose merely because they received access as participants.

The name restriction rests on plaintiffs' contractual and equitable theory, including the disputed termination, SHV's sublicense, the terms of the consent letter, and the alleged continuing use of protected development work. FAC Exs. 3, 6, 7C, 21, 25, 27, 43A–D, 49. The existence of ABG-SI's brand rights and T+L's contractual permissions is addressed by those documents. Plaintiffs contend that the asserted transition did not authorize the challenged use under the circumstances established by the evidence. The proposed restriction is temporary and is requested pending a determination of those rights. In *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895–97 (2d Cir. 2015), the Court of Appeals upheld temporary restrictions on unapproved trademark use under a license agreement. Plaintiffs likewise ask this Court to determine the scope of the applicable license, sublicense, and consent on the present record and to preserve the rights established by the evidence pending adjudication.

The creation history also bears on the contractual and equitable request for interim protection. Plaintiffs contributed the resort-specific branding as the parties built the licensed venture. Smith Decl. ¶¶ 2–5. Section 4(a) of the license addresses licensor Brand Rights, rights created by the licensee, and reserved rights; Section 4(e)(ii) addresses business names and related accounts. FAC Ex. 6 §§ 4(a), 4(e)(ii). Plaintiffs rely on those provisions, the sublicense and consent letter, and the

evidence of continuing use in requesting temporary protection pending adjudication of the parties' rights.

The requested interim restriction is directed to the challenged Sports Illustrated Resorts operations while the Court determines whether the contractual transition and defendants' exploitation of the identified venture materials were authorized. The Court should determine the appropriate scope on the evidentiary record and specify the acts restrained. See Fed. R. Civ. P. 65(d)(1); *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009) (injunctive relief should be narrowly tailored to the established violation). To the extent the requested restriction alters the relevant status quo, plaintiffs address the heightened standard under *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37–38 (2d Cir. 2018).

Plaintiffs dispute the asserted July 2024 default and termination. Schroeder describes the treatment he understood would be given to funds received in connection with the sublicense (FAC Ex. 28); Ghiselli describes ADMI's offer of a $300,000 loan that was not completed. Schroeder Decl. ¶¶ 11–20; Ghiselli Decl. ¶ 24. The parties' competing readings of the credit and consent provisions must be resolved from the agreements and evidence; receipt of funds alone does not establish that every separate obligation was discharged. The continuing-confidentiality question should also be considered under the terms applicable if termination were upheld.

The operating agreement provides a separate framework for SHV's governance and identifies the Tuscaloosa Riverfront among Existing ADMI Projects. FAC Ex. 3, Attachment A. Its § 15.4(e), related approval provisions, and § 6.7 must be considered as written, including their interaction with the amended license. The company's continued existence is relevant to preservation of its asserted assets and opportunities; it is not a substitute for proving authority,

ownership, or a violation of an applicable restriction. The operating agreement and the license contain separate forum provisions.

For the trade-secret claim, Plaintiffs must show particular information, independent economic value from secrecy, reasonable secrecy measures, ownership, interstate-commerce nexus, and actual or threatened misappropriation. 18 U.S.C. §§ 1836(b)(1), (b)(3)(A)(i), 1839(3)–(5). A confidential compilation may have protectable features, but broad labels such as "hospitality concept" or "all business strategies" do not establish the elements without specificity.

The record contains specific evidence of measures to protect the information: confidentiality markings and restricted distribution for ADMI's materials; the EVH–Kituwah and ADMI–T+L nondisclosure agreements; the license, MRLA and consent letter provisions; and SHV's employee confidentiality policy acknowledged by Crisp. FAC Exs. 2, 6, 13A, 21, 25, 27, 30; Ghiselli Decl. ¶ 7; Schroeder Decl. ¶¶ 8–10, ECF No. 97. The measures are to be assessed with the evidence identifying the protected information, its recipients and the challenged conduct.

In *BaseCap*, the Court evaluated nondisclosure obligations and measures restricting access together with evidence that the recipient had accessed and transferred information outside the authorized use. No. 23-cv-9370, ECF No. 43, at 4–6. The corresponding inquiry here begins with the contemporaneous ADMI and SHV development materials, the confidentiality agreements and policies, and the circumstances under which venture participants received access. The Court can assess the claimed use against the project records and witnesses' testimony at the requested hearing. FAC Exs. 2, 6, 13A, 21, 25, 27, 30, 49; Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97; Ghiselli Decl. ¶¶ 7, 17–22; Purdy Decl. ¶¶ 15–20, 27–28.

In *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43–46 (2d Cir. 1999), the Second Circuit considered the confidential nature of specialized business information, the precautions used

to protect it, and the recipient's obligations. Here, plaintiffs rely on identified development and operational materials and the written protections and internal policies described above. The question for preliminary relief is whether the evidence establishes protectable information and use or disclosure contrary to applicable duties.

Considered together, the evidence supports plaintiffs' showing on the merits: the earlier development work and project pipeline identify the information and opportunities; the nondisclosure agreements, license provisions, and employee policy document the measures taken to preserve confidentiality; the venture relationship explains defendants' access; and the Nashville and Tuscaloosa comparisons, together with witness testimony, bear on the alleged continuation and exploitation of the platform. FAC Exs. 2, 3, 6, 13A, 21, 25, 27, 30, 49; Ghiselli Decl. ¶¶ 7, 10–12, 17, 20–21, 31, 33–38; Purdy Decl. ¶¶ 9–20, 27–28; Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97. The Court can evaluate the specific materials and subsequent conduct in the context of the governing agreements and the evidence presented at the hearing.

A protectable trade secret may reside in a confidential combination of components even where individual components are public, if the combination's secrecy, competitive value and protective measures are established. *Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174–75 (2d Cir. 1990) (affirming judgment after evidence of secret software architecture and misuse). The analogy requires proof of the actual confidential resort-platform combination; it does not make generic hospitality concepts secret. *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43–46 (2d Cir. 1999), affirmed protection for a specialized client-contact list on its evidentiary record.

The original-to-current comparisons supply material corroboration of access and continuity. They do not obviate a disciplined inquiry into the particular protected information, who owned it, secrecy measures, and whether an identified recipient used it contrary to a duty. A private design

standard or confidential compilation of project selection, unit mix, amenities, financial assumptions and operating methods may be evaluated under the DTSA even where individual concepts are commonplace; publicly available branding and ABG-owned archive assets must be segregated. FAC ¶¶ 78–88, 283–300; FAC Exs. 6, 21, 25, 27, 49; Ghiselli and Purdy Decls.; Schroeder Decl. ¶¶ 6–10, 21–25, ECF No. 97.

**III. Likelihood of success — New York Franchise Sales Act.**

The First Amended Complaint separately alleges that the franchise transaction was unlawfully offered or structured without disclosures required by the New York Franchise Sales Act ("NYFSA"). General Business Law § 681(3) defines a franchise by two alternative paths: the required fee coupled with a substantially prescribed marketing system, or the required fee coupled with a business substantially associated with the franchisor's trademark or commercial symbol. It is the transaction's substance, not merely its label, that governs. See N.Y. Gen. Bus. Law §§ 681(3), 683, 687; *South Shore D'Lites, LLC v. First Class Prods. Grp., LLC*, 215 A.D.3d 412, 412–13 (1st Dep't 2023) (agreements styled sublicenses were franchises and disclaimer language did not remove statutory protection).

The license granted access to the Sports Illustrated marks in a branded hospitality business and established initial and recurring payment obligations. FAC Ex. 6 §§ 12, 15; FAC Ex. 7C. The later MRLA and Consent Letter expanded the relationship and provided for additional branded project and sales-and-marketing arrangements. FAC Exs. 25, 27. The FAC also cites ABG Sherman's (an attorney) August 17, 2023 instruction to remove references to "franchising," because triggering franchise laws would have significant implications, followed by revised drafts. FAC ¶ 154; FAC Exs. 23A–C. That contemporaneous correspondence is pertinent to awareness of regulatory issues; it is not, without applying the statutory definition and required proof, a concession of liability.

On October 17, 2025, after this action commenced, ABG's Chief Legal Officer, Jay Dubiner, executed a sworn declaration supporting ABG-SI's request for a discretionary exemption for a proposed Sports Illustrated Resorts license to Sports Resort Development, LLC, a wholly owned T+L subsidiary. FAC ¶ 96; FAC Ex. 1 ¶¶ 1, 3, 10 (ECF No. 139-1). Dubiner explained that the transaction may be covered by the Act because ABG was based in New York, communications concerning the transaction were directed to and generated from New York, and the licensee would operate under the Sports Illustrated name and marks and pay a license fee. Id. ¶ 5. He stated: **"This is a single sale of a franchise under the Act."** Id. ¶ 6. ABG's sworn characterization of the later transaction heavily supports Plaintiffs' claim that the earlier ADMI–EVH transaction, involving the same marks and a fee-bearing license to develop the branded hospitality business, likewise constituted a franchise. FAC ¶¶ 93–96, 338–341. Plaintiffs further allege that the absence of the required disclosures deprived them of information necessary to evaluate the transaction's risks, restrictions, and financial obligations. FAC ¶ 94.

Plaintiffs have established a substantial basis for their New York Franchise Sales Act claim. The 2021 license granted ADMI and EVH rights to use the Sports Illustrated marks to develop a branded hospitality business in exchange for substantial fees and continuing financial obligations. ABG's later sworn characterization of its T+L transaction as a franchise sale reinforces Plaintiffs' claim that the earlier transaction was subject to the Act's registration and disclosure requirements. Plaintiffs allege that ABG and ABG-SI failed to satisfy those requirements and that the resulting absence of material disclosures deprived Plaintiffs of information necessary to evaluate the transaction. N.Y. Gen. Bus. Law §§ 681, 683, 687, 691; FAC ¶¶ 93–96, 337–342 (Count XIV); FAC Ex. 1 ¶¶ 3, 5–6 (ECF No. 139-1).

## IV. Irreparable Injury Is Focused On Loss Of Secrecy And Specific Opportunities, Not Assumed From Brand Use.

In *Faiveley*, the Second Circuit held that likely misappropriation alone did not establish irreparable harm on the record presented; it distinguished an evidentiary risk of wider dissemination or destruction of secrecy from use for profit that could be compensated with damages. 559 F.3d at 118–19. Here, the declarations describe the protected development information, access provided in the venture, and challenged use and effects on relationships and opportunities. Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97; Purdy Decl. ¶¶ 15–20, 36–39; Ghiselli Decl. ¶¶ 17–22, 26–29, 36–38. Plaintiffs seek a hearing to establish the nature and imminence of that harm and the protection necessary to preserve the value of the information and relationships during this action.

Schroeder describes T+L's access and alleged public use of SHV materials and identifies business relationships he says were disrupted. Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97. Purdy describes the work and relationships assembled through SHV. Purdy Decl. ¶¶ 9–10, 15–18, 27–28. Ghiselli describes continuing effects on ADMI's financing, relationships, and opportunities. Ghiselli Decl. ¶¶ 26–29, 36–38.

A damages calculation may address proven royalties, fees and completed transactions, but plaintiffs contend it cannot necessarily restore secrecy after disclosure to additional parties, return a time-sensitive opportunity already committed elsewhere, or reconstruct an identifiable customer or development relationship and associated goodwill after displacement. The Court should assess that claim against actual evidence, including any contractual right to use the information, the identity of recipients, the measures available to limit dissemination and whether the alleged injury can be calculated and repaired later. SHV's claimed continuing existence is relevant to the preservation of its asserted interests; it does not alone resolve title, the challenged license termination, standing or entitlement to relief.

The FAC seeks to stop exploitation and obtain relief concerning protected material. FAC ¶¶ 360–363. The risk of further disclosure matters now because a later return or destruction order cannot retrieve knowledge already conveyed; likewise, a lost opportunity or relationship may not be restored by a later accounting. The declarations describe the development work and relationships at issue and the harm plaintiffs contend is continuing. Purdy Decl. ¶¶ 36–39; Ghiselli Decl. ¶¶ 26–29, 36–38. Plaintiffs request a hearing and interim relief directed to those demonstrated risks.

In *Marsh & McLennan Agency, LLC v. Alliant Insurance Services, Inc.*, No. 24-cv-9914, ECF No. 31, at 8–10 (S.D.N.Y. Jan. 27, 2025), this Court granted relief after evidence linked the taking of confidential client information to the loss of client relationships. The Court recognized the difficulty of valuing future business from relationships lost through a breach and treated the parties' contractual recognition of irreparable injury as an additional factor. Id.; see *Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Here, the declarations describe the development of particular opportunities and relationships, the disclosure of information in the venture, and resulting harm. FAC Exs. 21, 49; Schroeder Decl. ¶¶ 8–10, 21–25, ECF No. 97; Purdy Decl. ¶¶ 15–20, 27–28, 36–39; Ghiselli Decl. ¶¶ 17–22, 26–29, 36–38. Plaintiffs request a hearing to present that evidence and establish the connection between the protected work, the challenged conduct, and the threatened loss of relationships and opportunities.

In *Elder Technologies, Inc. v. Visone*, No. 25-cv-6165, ECF No. 55 (S.D.N.Y. Sept. 2, 2025), this Court denied relief after considering the record and concluding that the plaintiff had not demonstrated the required irreparable harm or clear likelihood of success. Plaintiffs request an evidentiary hearing to present the specific documents, witnesses and subsequent developments identified here. See also *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37–38 (2d Cir. 1995).

In *BaseCap Analytics Inc. v. Amenn*, No. 23-cv-9370, ECF No. 43 (S.D.N.Y. Nov. 22, 2023), this Court granted a preliminary injunction after a hearing concerning access to and transfer of confidential company information. The defendant agreed to most terms, while the Court resolved the disputed request for a forensic examination and tailored the resulting order. Id. Plaintiffs likewise seek a hearing to identify the protected development materials, their custodians, applicable restrictions, and the use or disclosure to be restrained. The requested temporary restriction on the Sports Illustrated Resorts name is also presented for determination on the agreements and the evidence concerning the challenged operations.

The need for prompt consideration is sharpened by the progression from the venture's 2023 development work and the June 2024 SHV pipeline to the 2026 Tuscaloosa groundbreaking and Nashville operation. FAC Exs. 3, 49; Purdy Decl. ¶¶ 19–20, 30, 32; Ghiselli Decl. ¶¶ 20–22, 31, 33. As Schroeder explains, the full scope of the alleged use became apparent incrementally as defendants announced successive projects, while SHV initially sought to preserve the venture and resolve the dispute through negotiations. Schroeder Decl. ¶¶ 27–29, ECF No. 97. Plaintiffs seek an expedited hearing to present the evidence of continuing use and threatened harm, including the most recent developments established by competent evidence, while the parties' rights remain unresolved.

**V. Balance of hardships, public interest, specificity and security.**

The balance of hardships favors interim protection of the particular confidential development materials and relationships shown by the evidence. Without relief, plaintiffs face the continuing risk that nonpublic work and relationships developed for the venture will be used or disclosed in connection with competing development while the opportunity to preserve their value diminishes. Purdy Decl. ¶¶ 36–39; Ghiselli Decl. ¶¶ 26–29, 36–38; Schroeder Decl. ¶¶ 21–25, ECF No. 97. Defendants' interests, including their asserted licensing and ongoing operational interests, can be

considered in defining the restraint and setting security. Plaintiffs ask the Court to evaluate those competing consequences on the hearing record, with the scope of any restraint matched to the evidence and the persons bound.

This Court has recognized the substantial public interest in protecting trade secrets and proprietary information and enforcing valid contracts. *BaseCap*, No. 23-cv-9370, ECF No. 43, at 6–7. That interest supports an order preserving identified confidential information and contractual rights while the merits are litigated. Plaintiffs request that the Court determine appropriate security under Rule 65(c), taking into account the scope of the relief and the evidence of potential costs if any party is wrongfully restrained.

Plaintiffs request an injunction identifying the protected materials, the persons bound, and the acts prohibited, as Rule 65(d) requires. They also seek a temporary restriction on the responding defendants' use of the "Sports Illustrated Resorts" name and logo in the challenged resort platform and projects. The hearing will permit the Court to evaluate the factual and contractual basis for that distinct restraint, its practical effect, and appropriate security. Plaintiffs request provisional protection pending adjudication, not a final determination of every contractual or ownership dispute.

**CONCLUSION**

Plaintiffs respectfully request an order to show cause setting an expedited evidentiary hearing and briefing; preliminary protection against the unauthorized use or disclosure of identified confidential development materials; a temporary restriction on the responding defendants' use of the name and logo "Sports Illustrated Resorts" in connection with the challenged resort platform and projects pending adjudication; appropriate security; and such further relief as the Court finds just.

Dated: November 15, 2026

Respectfully submitted:

**LAW OFFICE OF DOUGLAS R. DOLLINGER, P.C.**

Douglas R. Dollinger, Esq.

Douglas R. Dollinger, Esq.
Attorney for ADMI Inc. and SIR Inc.
570 County Rt. 49
Middletown, New York 10940
Tel: 845.741.9363
Email: ddollingeresq@gmail.com

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing memorandum contains 7,085 words, excluding the caption, tables, exhibit list, signature block, and this certificate.

Dated: November 15, 2026

Douglas R. Dollinger, Esq.
Douglas R. Dollinger, Esq.